[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

**FILED**
**U.S. COURT OF APPEALS**
**ELEVENTH CIRCUIT**
**January 11, 2006**
**THOMAS  K. KAHN**
**CLERK**

No. 05-13359
Non-Argument Calendar
_____

Agency No. A77-927-724

QIAO DAN WANG,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

**(January 11, 2006)**

Before BIRCH, MARCUS and WILSON, Circuit Judges.

PER CURIAM:

Qiao Dan Wang, a native and citizen of China, petitions for review of the

Board of Immigration Appeals's ("BIA") order affirming without opinion the denial of asylum, withholding of removal, and relief pursuant to the United Nations Convention Against Torture and other Cruel, Inhumane, and Degrading Treatment or Punishment ("CAT") by the Immigration Judge ("IJ"). Petitioner argues to us that the IJ wrongly concluded that she had not sufficiently described facts to establish her claim. Because we can discern no error in the IJ's determination, we DENY the petition.

## I. BACKGROUND

In May 2000, petitioner attempted to enter the United States under a fraudulent Malaysian passport. She stated that she was a factory worker from Fujian Province, China. Petitioner claimed that she had to leave China because the son of high official was sexually assaulting her and the high official came to her house and threatened her.

An asylum officer conducted a credible fear interview of petitioner and determined that she had met the credible fear standard. During the interview, she asserted that the basis for her claim was that in January 2000 the manager at the brick factory where she worked sexually harassed her. She stated that the manager had the police go to her house in March 2000 and that the police accused her of ruining the manager's reputation and told her to keep quiet. Because she was

2

nervous, petitioner said that she failed to mention anything about her being accused of practicing Falun Gong during the interview.

On 20 July 2000, petitioner signed an application for asylum and withholding of removal under the INA and the CAT, alleging past persecution and fear of future persecution on the basis of her political opinion. In the application, she alleged that in January 2000 she made some remarks in support of Falun Gong in front of her co-workers and manager during a lunch break. The police accused her of ruining the manager's reputation and of opposing the government's Falun Gong ban. Petitioner stated in her application that she feared that if she is returned to China that she would be arrested on account of her political opinions and because she left China illegally.

The United States State Department Country Reports on Human Rights Practices for 2002 ("Country Report") for China was included in the record. According to the Country Report, China's human rights record remained poor, and the government continued to commit numerous and serious abuses, including "instances of extrajudicial killings, torture and mistreatment of prisoners, forced confessions, arbitrary arrest and detention, lengthy incommunicado detention, and denial of due process." AR at 77. "[T]he Government continued to wage a severe political, propaganda, and police campaign against the [Falun Gong] movement

3

during the year," and a "mere belief in the discipline, without any outward manifestation of its tenets, has been sufficient grounds for practitioners to receive punishments ranging from loss of employment to imprisonment, and in many cases, to suffer torture and death." Id. at 90. "[T]here were numerous credible reports of abuse and even killings of [Falun Gong] practitioners by the police and other security personnel, including police involvement in beatings, detention under extremely harsh conditions, and torture," but most Falun Gong practitioners were punished administratively, and "the vast majority of practitioners detained since 2000 were released." Id. at 95.

Furthermore, the Country Report stated that the government restricted the freedom of movement around the country and restricted the freedom to change one's workplace but that the ability of citizens to relocate continued to improve. The Country Report also stated that the government permitted legal emigration and foreign travel for most citizens, and that passports were increasingly easy to obtain.

The IJ denied petitioner's applications for relief and entered an order of removal. Specifically, the IJ found that her testimony was not sufficiently detailed, consistent, or believable to provide a plausible and coherent account sufficient to establish her eligibility for asylum or withholding. The IJ noted several reasons for her findings, including (1) the inconsistencies between petitioner's testimony and

4

other evidence; (2) petitioner's failure to explain why, if she left the factory to work at another place or another part of the country, there would be a presumption that she was practicing Falun Gong; (3) her failure to mention the Falun Gong incident to the INS at the airport or during her credible fear interview; and (4) the fact that she was never arrested, detained, or interrogated, despite claims that the police came to her house and told her that she was suspected of belonging to Falun Gong. The IJ concluded that, at most, Wang had some claim of sexual harassment at work.

In denying relief under CAT, the IJ found that petitioner had not established that it was more likely than not that she would be tortured upon her return to China. The IJ noted that (1) she was not tortured in the past, (2) there was no evidence that the government was looking for her, and (3) there no information regarding any arrest warrant or charges. The IJ concluded that petitioner had not shown that she would be tortured upon her return, as opposed to being charged with some violation of the law and being arrested or imprisoned.

On appeal, petitioner argues that she has a well-founded fear of persecution based on her membership in a social group, her religion, and her political opinion. She argues that she had to leave China on account of being sexually harassed by the manager of the factory where she worked and because she was falsely accused

5

of being a member of Falun Gong.  Finally, she claims that, upon her return to China, she would suffer persecution and torture because she sought asylum in the United States and because she became a Falun Gong member during her stay here.

## II. DISCUSSION

A.  Subject Matter Jurisdiction

As an initial matter, we "are obligated to inquire into subject-matter jurisdiction sua sponte whenever it may be lacking." Cadet v. Bulger, 377 F.3d 1173, 1179 (11th Cir. 2004) (citation and quotation omitted).  We can review a final order of removal only if "the alien has exhausted all administrative remedies available to the alien as of right."  8 U.S.C. § 1252(d)(1).  Accordingly, we lack jurisdiction to consider claims that were not raised before the BIA. See Fernandez-Bernal v. Att'y Gen. of the U.S., 257 F.3d 1304, 1317 n.13 (11th Cir. 2001).

In this case, petitioner did not present to the IJ or the BIA her claims for asylum on account of her membership in a particular social group or her religion. Therefore, she has failed to exhaust her administrative remedies with regard to these claims, and we lack jurisdiction to consider them.  See Fernandez-Bernal, 257 F.3d at 1317 n.13.  Accordingly, we dismiss any portion of the petition

6

addressing these claims.

B. Asylum

When the BIA summarily affirmed the IJ's decision without an opinion, the IJ's decision became the final removal order subject to review. See 8 C.F.R. § 1003.1(e)(4); Mendoza v. U.S. Att'y Gen., 327 F.3d 1283, 1284 n.1 (11th Cir. 2003). "To the extent that the [IJ]'s decision was based on a legal determination, this court's review is de novo." D-Muhumed v. U.S. Att'y Gen., 388 F.3d 814, 817 (11th Cir. 2004).

The IJ's factual determinations are reviewed under the substantial evidence test, and we "must affirm the [IJ]'s decision if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole." Al Najjar v. Ashcroft, 257 F.3d 1262, 1284 (11th Cir. 2001) (citation and quotation omitted). "[W]e cannot engage in fact-finding on appeal, nor may [we] weigh evidence that was not previously considered below." Id. at 1278. Therefore, a finding of fact will be reversed "only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal." Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004), cert. denied, __U.S. __, 125 S. Ct. 2245 (2005); see also 8 U.S.C. § 1252(b)(4)(B) ("[T]he administrative findings of fact are conclusive unless any reasonable

adjudicator would be compelled to conclude to the contrary.").

An alien who arrives in, or is present in, the United States may apply for asylum. See 8 U.S.C. § 1158(a)(1). The Secretary of Homeland Security or the Attorney General has discretion to grant asylum if the alien meets the INA's definition of a "refugee." See id. § 1158(b)(1). A "refugee" is defined as:

> any person who is outside any country of such person's nationality . . . and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.

Id. § 1101(a)(42)(A). "The asylum applicant carries the burden of proving statutory 'refugee' status." D-Muhumed, 388 F.3d at 818.

To establish asylum eligibility, the petitioner must, with specific and credible evidence, demonstrate (1) past persecution on account of a statutorily listed factor, or (2) a "well-founded fear" that the statutorily listed factor will cause future persecution. 8 C.F.R. § 208.13(b)(1), (2); Al Najjar, 257 F.3d at 1287. If the petitioner demonstrates past persecution, there is a rebuttable presumption that he has a well-founded fear of future persecution. See 8 C.F.R § 208.13(b)(1). If he cannot show past persecution, then the petitioner must demonstrate a well-founded fear of future persecution that is both "subjectively genuine and

8

objectively reasonable." See Al Najjar, 257 F.3d at 1289. The subjective component can be proved "by the applicant's credible testimony that he or she genuinely fears persecution," while the objective component "can be fulfilled either by establishing past persecution or that he or she has a good reason to fear future persecution." Id. (citation and quotation omitted).

Neither the INA nor the regulations define "persecution." We have stated, however, that "persecution is an extreme concept, requiring more than few isolated incidents of verbal harassment or intimidation, and . . . mere harassment does not amount to persecution." Sepulveda v. U.S. Att'y Gen., 401 F.3d 1226, 1231 (11th Cir. 2005) (per curiam) (citation and quotations omitted). The petitioner's well-founded fear of persecution must be because of one of the statutorily listed factors, such as his political opinion. See INS v. Elias-Zacarias, 502 U.S. 478, 482, 112 S. Ct. 812, 816 (1992). The petitioner must establish this causal connection by "presenting specific, detailed facts showing a good reason to fear that he or she will be singled out for persecution" on account the statutory factor. Sepulveda, 401 F.3d at 1231 (citation and quotation omitted). Finally, we have approved of a "country-wide requirement" in which a refugee must first pursue an "internal resettlement alternative" in his own country, or establish that this is not possible, before seeking asylum here. Mazariegos v. Office of the U.S. Att'y Gen., 241 F.3d

9

1320, 1326–27 (11th Cir. 2001).

Substantial evidence supports the IJ's conclusion that the petitioner in this case failed to meet her burden of establishing past persecution, and the record does not compel us to reverse this determination. Qiao Dan Wang failed to carry her burden of demonstrating past persecution on account of a statutorily listed factor due to the lack of specific credible evidence. At most, she was a victim of sexual harassment and an unsympathetic police force. This evidence is not sufficient to compel a reversal of the IJ's finding that she did not suffer past persecution. See Adefemi, 386 F.3d at 1027.

Furthermore, petitioner cannot establish future persecution. She failed to establish a causal connection that her current practice of Falun Gong will result in future persecution. See Sepulveda, 401 F.3d at 1231. Petitioner did not present "specific, detailed facts showing a good reason to fear that . . . she will be singled out for persecution" on account of the statutory factor. Sepulveda, 401 F.3d at 1231 (citation and quotation omitted). Moreover, she has not shown that there is a reasonable possibility she will suffer persecution if removed to her native country or that she could not avoid persecution by relocating to another part of China. See 8 C.F.R. § 208.13(b)(2), (3)(i).

C.  Withholding of Removal

10

The IJ's factual determination that an alien is not entitled to withholding of removal must be upheld if it is supported by substantial evidence. See Al Najjar, 257 F.3d at 1283. An alien is entitled to withholding of removal under the INA if he or she can show that his or her "life or freedom would be threatened on account of race, religion, nationality, membership in a particular social group, or political opinion." Mendoza, 327 F.3d at 1287; see also 8 U.S.C. § 1231(b)(3). As a general rule, however, if "an applicant is unable to meet the 'well-founded fear' standard for asylum, he is generally precluded from qualifying for either asylum or withholding of deportation." Al Najjar, 257 F.3d at 1292–93 (citation and quotation omitted).

In this case, because Qiao Dan Wang failed to establish past persecution or a well-founded fear of persecution sufficient to support her asylum claim, as discussed above, she cannot establish that she is eligible for withholding of removal under the INA. See id.

D. CAT Relief

In order to obtain relief under the CAT, the burden is on the applicant to establish that it is "more likely than not" that he will be tortured in the country of removal. 8 C.F.R. § 208.16(c)(2).

> Torture is defined as any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person for

11

such purposes as obtaining from him or her or a third person information or a confession, punishing him or her for an act he or she or a third person has committed or is suspected of having committed, or intimidating or coercing him or her or a third person, or for any reason based on discrimination of any kind, when such pain or suffering is inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity.

Id. § 208.18(a)(1). Torture does not include pain or suffering arising only from lawfully imposed sanctions, and the torturous act "must be specifically intended to inflict severe physical or mental pain or suffering." Id. § 208.18(a)(3), (5). Furthermore, we have noted that when a petitioner "has failed to establish a claim of asylum on the merits, he necessarily fails to establish eligibility for . . . protection under CAT." Forgue v. U.S. Att'y Gen., 401 F.3d 1282, 1288 n.4 (11th Cir. 2005).

In this case, substantial evidence supports the IJ's denial of protection under the CAT because Qiao Dan Wang failed to establish that she would more likely than not be tortured by the Chinese government upon her return. Because Wang failed to establish her eligibility for asylum, she necessarily fails to establish her eligibility for protection under the CAT. See id. The evidence in the record reveals that most Falun Gong practitioners were either punished administratively or ordered to attend anti-Falun Gong classes, not tortured. This type of punishment does not amount to torture under the regulations, as it is not intended to inflict

12

severe physical or mental pain or suffering.  <u>See</u> 8 C.F.R. § 208.18(a).

### III. CONCLUSION

Qiao Dan Wang petitions for review of the BIA's order affirming the IJ's denial of asylum, withholding of removal, and CAT relief.  Her arguments fail because the IJ reasonably concluded, among other things, that petitioner could not show sufficient probability of future harm.  **PETITION DISMISSED IN PART AND DENIED IN PART.**